**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The WILLIAM J. BURNS INTERNATIONAL DETECTIVE AGENCY, INC., Respondent.**

**No. 17850.**

United States Court of Appeals
Eighth Circuit.

June 18, 1965.

Stephen B. Goldberg, Attorney, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, N. L. R. B., Wash-

ington, D. C., Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel and Herman M. Levy, Attorney, N. L. R. B., Washington, D. C., for petitioner.

Lucian Lane, of Tucker, Murphy, Wilson, Lane & Kelly, Kansas City, Mo., for respondent.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This case is before this court upon petition of the National Labor Relations Board pursuant to § 10(e) of the National Labor Relations Act as amended [1] for enforcement of its order issued against the respondent, William J. Burns International Detective Agency, Inc., hereinafter Burns, on September 24, 1964.

Burns, by cross-petition pursuant to § 10(f) of the Act, asks the court to review and set aside the portion of the Board's order finding it to be in violation of the Act and the order setting aside a representation election at Kansas City. The Board's decision and order and the report of the Trial Examiner are reported at 148 NLRB No. 13.

■ The alleged unfair labor practices occurred in Omaha, Nebraska, and Kansas City, Missouri, within this judicial circuit. This court has jurisdiction over the controversy here presented except with respect to the attack on the Board's order setting aside the Kansas City representation election. No charge on refusal to bargain with a certified bargaining agent of the Kansas City employees is involved in this proceeding. Courts of Appeal lack jurisdiction to directly review Board's decisions on certification proceedings. The attacks on an election generally can only be reviewed as part of the record in a hearing upon a complaint charging a refusal to bargain. See Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849; Hendrix Mfg. Co. v. N. L. R.

B., 5 Cir., 321 F.2d 100, 106; N. L. R. B. v. Blades Mfg. Corp., 8 Cir., 344 F.2d 998 (May 10, 1965).

Separate complaints were filed charging Burns with violations of the Act in its operations at Omaha and Kansas City. Such complaints were consolidated for hearing. All matters litigated are covered by the Board's decision and order. The issues raised with respect to the Omaha and Kansas City divisions of Burns are quite different and hence, separate discussion of such operations appears desirable.

Omaha Operation.

The Board found that Burns violated § 8(a) (5) and (1) by terminating its contract with Creighton University without notice to or bargaining with the International Guards Union of America, hereinafter called the Union, which was the certified bargaining agent of the Omaha employees. Such bargaining, the Board urges, is compelled by Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233.

On February 19, 1963, following a Board conducted mail election, the Union was certified as the collective bargaining agent for Burns guard employees in the metropolitan Omaha area. At the time of the election, there were four employees in the bargaining unit all of whom were performing their duties at Creighton University under a Burns contract calling for forty-three hours of guard service per week. Within a year prior to the election, Omaha Steel, Safeway Stores and Kellogg Company had terminated contracts with Burns calling for guard service.

On March 1, 1963, Burns' manager contacted the Union representative expressing a willingness to enter into bargaining negotiations. A meeting was delayed by reason of illness in the Union representative's family. Later, a meeting was tentatively fixed for April 8. On

1. 29 U.S.C.A. § 151 et seq. Statutory references in this opinion are to such Act unless otherwise indicated.

April 5, Burns wrote the Union a letter, stating:

"This will confirm receipt of your March 26, 1963, letter regarding Burns guards at Omaha, Nebraska. We have just currently been advised by the Kellogg Company, Omaha, Nebraska, that they have canceled our contract, effective April 8, 1963. The Agency's guard service at Creighton University in Omaha is also to be discontinued as of April 14, 1963. As you know, this leaves the Agency with no guard contracts in Omaha. In view of the foregoing developments, I can see no practical reason for meeting with you in Omaha as suggsted."

After receiving such letter, the Union made no effort to contact Burns to request further bargaining, but instead filed charges that Safeway, Kellogg and Creighton University had conspired with Burns to terminate the contracts in order to interfere with, and coerce and restrain Burns' employees. Such charges were withdrawn by the Union. A new charge filed against Burns alleged refusal since March 1, 1963, to bargain with the Union as the exclusive bargaining agent of its employees in violation of § 8(a) (5). The present complaint is based upon such charge.

■ Near the close of the hearing upon the complaint, the Trial Examiner inquired: "Is the General Counsel alleging or assuming any Town and Country overtones in this case, in other words, is the complaint alleging that the mere refusal to consult the union about termination of the Creighton contract, irrespective of anything else, is a violation of Section 8(a) (5)?" He received an affirmative response. After the Trial Examiner expressed doubt as to whether such issue had been properly raised, the General Counsel moved to amend paragraph 12 of the complaint "to add to that paragraph that the respondent also did on or about April 14, 1963, cancel the Creighton contract without notification or discussion with the union." Burns objected to the amendment. Such objec-

tion was overruled. The Examiner advised counsel that he would give him any time he might need to consider the matter and to produce testimony to meet the amendment. No error resulted from permitting the amendment. Section 10(b) specifically gives the Board or hearing officer discretionary power to permit amendments. The amendment falls within the terms of the § 8(a) (5) charge in the complaint. It served the purpose of more specifically advising the Board and the parties that refusal to bargain with respect to the termination of the Creighton University contract was being charged. Inasmuch as Burns was granted such time as might be needed to produce evidence and brief the issue, no prejudice resulted from permitting the amendment. See Radio Officers' Union, etc. v. N. L. R. B., 347 U.S. 17, 34, footnote 30, 74 S.Ct. 323, 98 L.Ed. 455; N. L. R. B. v. Local 691, Intern. Broth. of Teamsters, etc., 7 Cir., 270 F.2d 696, 699.

■ Burns' contention that the Union is not the bargaining agent of its Omaha employees lacks merit. Burns has failed to establish that the unit as determined by the Board is not appropriate. Absent a showing of abuse of discretion, the Board's unit determination is entitled to stand. May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 380, 66 S.Ct. 203, 90 L.Ed. 145; N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 134, 64 S.Ct. 851, 88 L.Ed. 1170; N. L. R. B. v. Schill Steel Products, Inc., 5 Cir., 340 F.2d 568, 574.

■■ The Board committed no error in refusing to count the Henry ballot. At the time of the election, the unit consisted of four guards. Each employee was mailed a ballot on January 11, 1963, accompanied by instructions advising that all ballots be returned by mail in time to be received by January 23, 1963, at 3:30 p. m. Employee Henry for reasons not explained did not receive his ballot until January 21, 1963. The other employees received their ballots on January 14. Henry did not place his ballot in the mail until 8 p. m. on January 23. This was after the time fixed for closing

the polls and after the ballots had in fact been counted, the result being two votes for the Union and one against. The Regional Director found Henry had ample time to cast a timely vote and that the late ballot should not be counted. There is no evidence as to how Henry voted. The Board has a right to prescribe reasonable rules relating to the conduct of elections. Upon the basis of the facts before us, no error was committed in refusing to count the Henry ballot which was received after the polls had. closed and after the ballots had been counted. See National Van Lines, Inc. v. N. L. R. B., 7 Cir., 273 F.2d 402, 407.

■ We now reach the primary issue, which is whether the failure of Burns to bargain with the Union with respect to the termination of its contract with Creighton University constitutes a failure to bargain violative of § 8(a) (5). We hold that no such violation is established.

The Board's argument is based upon the Supreme Court decision in Fibreboard, supra. Our present case is clearly distinguishable factually from Fibreboard. In Fibreboard, the employer without negotiating with the union, employed an independent contractor to perform the maintenance work at its plant, terminating the employment of its maintenance workers. The Court held that such contracting out was a subject of mandatory bargaining under § 8(d) and that failure to bargain was violative of § 8(a) (5). The Court's opinion as well as the concurring opinion joined in by three Justices each stresses that the decision is based upon the facts of the case before the Court. Chief Justice Warren, speaking for the Court, states:

"We are thus not expanding the scope of mandatory bargaining to hold, as we do now, that the type of 'contracting out' involved in this case—the replacement of employees in the existing bargaining unit with those of an independent contractor to do the same work under similar conditions of employment—is a statutory subject of collective bargaining under § 8(d). Our decision need not and does not encompass other forms of 'contracting out' or 'subcontracting' which arise daily in our complex economy." Fibreboard Paper Products Corp. v. N. L. R. B., supra, 379 U.S. at 215, 85 S.Ct. at 405.

See also footnote 8 to such opinion.

In our present case, the employer has completely discontinued its operation at Omaha. Unlike the Fibreboard situation, Burns is not continuing the same work at the same plant under similar conditions of employment. No form of contracting out or subcontracting is here involved. Burns for valid economic reasons has withdrawn completely from providing any services in the Omaha area. No one is performing for Burns by subcontract or otherwise the services formerly rendered by its Omaha guards.

Mr. Justice Stewart in the course of his concurring opinion in Fibreboard states:

"Only a narrower concept of 'conditions of employment' will serve the statutory purpose of delineating a limited category of issues which are subject to the duty to bargain collectively. Seeking to effect this purpose, at least seven circuits have interpreted the statutory language to exclude various kinds of management decisions from the scope of the duty to bargain.

\* \* \* \* \* \*

"While employment security has thus properly been recognized in various circumstances as a condition of employment, it surely does not follow that every decision which may affect job security is a subject of compulsory collective bargaining.

\* \* \* \* \* \*

"Nothing the Court holds today should be understood as imposing a duty to bargain collectively regarding such managerial decisions, which lie at the core of entrepreneurial control. Decisions concerning the commitment of investment capital and

the basic scope of the enterprise are not in themselves primarily about conditions of employment, though the effect of the decision may be necessarily to terminate employment. If, as I think clear, the purpose of § 8(d) is to describe a limited area subject to the duty of collective bargaining, those management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security should be excluded from that area." Fibreboard Paper Products Corp. v. N. L. R. B., supra, at 221, 223, 85 S.Ct. at 408, 409.

In Textile Workers Union of America v. Darlington Mfg. Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (March 29, 1965), the Court without dissent determined that when an employer closes his entire business such action does not constitute an unfair labor practice even if motivated by vindictiveness toward the Union. With reference to a partial closing of a business, the Court holds: "[A] partial closing is an unfair labor practice under § 8(a)(3) if motivated by a purpose to chill unionism in any of the remaining plants of the single employer and if the employer may reasonably have foreseen that such closing will likely have that effect." 380 U.S. 263, 275, 85 S.Ct. 994, 1002. The Court further states:

"We have heretofore observed that employer action which has a foreseeable consequence of discouraging concerted activities generally does not amount to a violation of § 8(a)(3) in the absence of a showing of motivation which is aimed at achieving the prohibited effect. See Local 357 International Brotherhood of Teamsters Local v. National Labor Relations Board, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11, and the concurring opinion therein, at 677, 81 S.Ct. at 840. In an area which trenches so closely upon otherwise legitimate employer prerogatives, we consider the absence of Board findings on this score a fatal defect in its decision." 380 U.S. 263, 276, 85 S.Ct. 994, 1003.

In our present case, the Omaha division of the employer's business was completely closed. Before cancelling the Creighton contract, Burns unsuccessfully endeavored to obtain additional contracts in Omaha. The Trial Examiner found upon the basis of credible evidence that Burns could not serve Creighton University alone without incurring substantial financial loss. After summarizing the evidence, the Examiner states: "In these circumstances, I am unable to conclude that the General Counsel established by the preponderance of the evidence that Respondent was motivated by antiunion considerations in terminating the Creighton University contract."

While such finding was made in dealing with a charged § 8(a)(3) violation, the finding as to motive equally applies to the facts relevant to the § 8(a)(5) violation.

The Board adopted the Examiner's findings to the extent consistent with its decision. Nothing appears in the Board's opinion showing a disapproval of the findings just set out. Both the Examiner and the Board heard this case prior to the Supreme Court decision in Darlington. Hence, no consideration was given to the teaching of Darlington that a partial closing of one's business is not an unfair labor practice in the absence of a showing of motivation which is aimed at achieving a prohibited effect.

■ The rationale of Fibreboard as applied to the facts of this case does not support the Board's decision. Under Darlington, the finding of lack of antiunion motivation in closing the Omaha division for economic reasons precludes a finding of unfair labor practice in refusing to bargain with the Union on the cancellation of the Creighton contract and the closing of the Omaha division.[2]

---

2. The Board, in a footnote to its brief, states that if Burns was not obligated to

bargain its decision to discontinue the Omaha operation, it violated the Act by

### Kansas City Operation.

With respect to the Kansas City operation, the Board found Burns had violated § 8(a) (1) in a number of ways. The Board upheld the Examiner's finding that Lieutenant Evans on March 5, 1963, in talking with guard Hesselton, had offered to bet $5 that the unit would not go union and had commented that if the unit did not go union, the company had something cooking up better for the boys. Both the Board and the Examiner determined that such conduct constituted an inducement to Hesselton to vote against the union. While the evidence upon this issue is conflicting and is not overwhelming, we cannot say that the finding is not supported by substantial evidence upon the record as a whole.

The Board, contrary to the Examiner, found that a series of letters sent by Burns to its Kansas City employees during the organization campaign were false, misleading and coercive in violation of § 8(a) (1), and that such letters were not within the protection of the free speech provisions of § 8(c). The basic complaint about the letters is that they falsely imply that Omaha customers cancelled contracts because of union organizational activities whereas, so far as the record discloses, the customers in cancelling the contracts assigned other reasons for the cancellation. Burns admits that the implication exists but insists there is a factual basis for the implication. It is doubtful whether the alleged false implications amount to a threat of reprisal or force or promise of a benefit, the stated statutory exceptions to the § 8(c) free speech provision.

International Union of Elec., Radio & Machine Workers v. N. L. R. B., 110 U.S.App.D.C. 91, 289 F.2d 757, largely relied upon by the Board, is distinguishable factually in many respects from our present case. The right of free speech guaranteed by the First Amendment and by § 8(c) should not be defeated by narrow or strained construction. See N. L. R. B. v. Laars Engineers, Inc., 9 Cir., 332 F.2d 664, 667; Union Carbide Corp. v. N. L. R. B., 6 Cir., 310 F.2d 844, 845.

Our affirmance of the § 8(a) (1) violation based upon Lieutenant Evans' remark to Hesselton entitles the Board to enforcement of its order based on violation of § 8(a) (1) and § 7 rights and hence little would be accomplished by considering in detail whether additional violations of such sections are established.

The Board's order, insofar as it grants relief to the Kansas City employees for § 8(a) (1) and § 7 violations, will be enforced.

Enforcement of the Board's order for § 8(a) (5) relief to the Omaha employees and for reinstatement and back pay to such employees is denied.

---

its failure to confer with the Union with respect to the effects of its decision. We do not believe such issue was properly raised in the complaint. The amendment to the complaint permitted by the Examiner, which has heretofore been set out, relates to refusal to bargain with respect to the contract cancellation. The record before us shows that the Union upon being advised that the Omaha business was closing made no request for bargaining concerning the effects of closing but instead immediately filed charges based upon the cancellation of the Creighton contract.