NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DAVIS CAFETERIA, INC., and Polly
Davis, Broward Cafeteria, Inc.,
Respondents.

No. 21578.

United States Court of Appeals
Fifth Circuit.

March 18, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Richard P. Lawlor, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Elliott Moore, Atty., N. L. R. B., for petitioner.

J. Frank Ogletree, Jr., Atlanta, Ga., Robert T. Thompson, Atlanta, Ga., Thompson, Ogletree & Haynsworth, Atlanta, Ga., of counsel, for respondents.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and GROOMS, District Judge.

JONES, Circuit Judge:

Davis Cafeteria, Inc., herein called Davis, operates a cafeteria in Hollywood, Broward County, Florida. Polly Davis Broward Cafeteria, Inc., herein called Broward, operates a cafeteria in Fort Lauderdale, Broward County, Florida. The two cafeterias are about eight miles apart. Davis and Broward are wholly owned subsidiaries of Miami Cafeteria, Inc., which has its general offices in Miami, Dade County, Florida. The parent company owns, through stock ownership, six additional cafeterias all of which are in or in the environs of Miami, Dade County, Florida. These eight cafeterias, in the adjoining Southeast Florida counties of Broward and Dade, are a part of a larger chain of cafeterias, each of which

is owned and operated by a separate corporation. For some administrative purposes the eight cafeterias are grouped into districts, each of which is headed by a district supervisor. Davis and Broward are in the same district as the cafeteria of Davis Colonial, Inc., in Miami, and Polly Davis Cafeteria, Inc., in Miami Beach, both in Dade County. The Dade County cafeterias are eight miles apart and twenty miles, more or less, from the Broward County cafeterias.

The combined retail sales of Davis and Broward in 1962 were in excess of $900,-000. In that year these cafeterias made purchases of meat and meat supplies from two interstate suppliers in an amount exceeding $70,000, of which 85 to 90 percent originated outside Florida. The meat and meat supplies from outside Florida were processed in Florida before being purchased by the cafeterias. The business of the cafeterias was less than one percent of the total sales of the meat suppliers. There was no other evidence connecting Davis or Broward with interstate commerce. The district supervisor is the liaison between the central office and the separate cafeterias in his district. Each cafeteria has its own bank account but only central office personnel can draw checks on the accounts. Each cafeteria is under the direction of a manager who has authority to hire, fire and discipline employees, but he cannot grant pay raises. Each of the managers may select the day-to-day menus from a master menu list supplied by the central office. Such items of food and other supplies as may be needed are ordered by the local managers from suppliers designated by the central office. Rates of pay, hours of employment, insurance benefits, overtime and vacation schedules are fixed by the central office. Payrolls are made up, social security, tax and other deductions are computed, and pay checks are drawn in the central office. The prices to be charged to customers are determined by the central office.

The Hotel & Restaurant Employees & Bartenders Union, Local 339, AFL-CIO, filed a representation petition seeking certification to represent the employees of the Davis and Broward cafeterias as a single unit. A hearing was had but there was no determination as to whether the employees of the two cafeterias constituted an appropriate bargaining unit. There was a determination by the Regional Director that the employees of each of the cafeterias constituted a separate bargaining unit. The Board refused to review this determination. Elections were held at each of the cafeterias, first at Davis and thereafter at Broward, and, over the objection of the employers, the results of the election at Davis were made known to the employees of Broward before the balloting there. There was a substantial union majority at both elections. The union's request for negotiations was declined by the employers. The Board, in a proceeding charging a refusal to recognize and bargain with the union, refused to consider the appropriateness of the bargaining units, determined that the operations of the cafeterias affected interstate commerce, that the elections were properly conducted and that the union represented the employees. It ordered the cafeterias to bargain with the union and by this proceeding seeks enforcement of its order.

 The proof as to whether the operations of the cafeterias affected interstate commerce is far from overwhelming but is, we think, sufficient for jurisdictional purposes. The manner of conducting the elections does not seem to have been an abuse of discretion. At Davis the vote was 28 for the union and 11 against. At Broward the vote was 20 for the union and 7 against. The smallness of the percentage difference of the union's majority at the two cafeterias comes close to dispelling any suggestion of prejudice.

 The question of the appropriateness of the units must, we conclude, be sent back to the Board for its further consideration. The union sought to have the employees of the two cafeterias as a single bargaining unit. The employers objected, saying that such a classification was arbitrary and improper. The

employers contended that the appropriate unit would be the entire chain or the cafeterias in the district which included two in adjoining Dade County as well as those in Broward County which are the respondents here. The International Representative of the union testified that Local 339 had jurisdiction in Broward County, where Davis and Broward are located, and that the Local would organize only in the area in which it had jurisdiction. Counsel for the union was asked by a hearing officer if the union would accept a unit composed of Davis, Broward and the two cafeterias in Dade County in the same district. He replied that it would not, and that the jurisdiction of the Local is Broward County. It thus appears that the larger bargaining unit was or may have been rejected because of the territorial limit upon the union's jurisdiction. The Board suggests that the union's willingness to represent employees rather than its ability to do so is controlling rather than the territorial limits upon its jurisdiction. The Board contends that the restriction should not be considered because the International Union might have enlarged the jurisdiction of the Local. The answer to these arguments is simply that the union was asked if it would accept the larger unit and it refused to do so and speculations serve no purpose. The Board points out that the Regional Director's decision does not advert to any jurisdictional considerations. This is true, and this is the difficulty. Neither the Regional Director, the Examiner nor the Board has disclosed the basis of the unit determination. The Board's decisions in the area are difficult to reconcile. In the unreported case of Bickford's Inc., a case so similar to this case in its facts that efforts to distinguish it seem futile, the Regional Director dismissed a representation petition because neither two Bickford cafeterias together nor either separately would constitute an appropriate bargaining unit. Our decision here is controlled by N.L.R.B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 85 S.Ct. 1061, 13 L.Ed.2d 951, where, as in this case, counsel for the Board in brief and argument sought to rationalize the Board's position. The Supreme Court applied the 1947 amendment to the National Labor Relations Act which provided that in determining whether a unit is appropriate, the extent to which the employees have organized shall not be controlling. 29 U.S.C.A. § 159(c) (5). The case was remanded to the Board because it had failed to state the basis of its decision, without which there could be no proper review. Since, as is the case here as it was in Metropolitan Life, the Board has failed to disclose the basis of its order, enforcement of the order must be denied and the cause remanded to the Board for further proceedings consistent with the Metropolitan Life Insurance Co. opinion.

Enforcement denied, cause remanded.