**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GROENDYKE TRANSPORT, INC., Respondent,**

International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local No. 961, Intervenors.

No. 8571.

United States Court of Appeals Tenth Circuit.

Jan. 20, 1967.

Rehearing Denied March 1, 1967.

Samuel D. Bozza, Newark, N. J., for appellant.

Donald Horowitz, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before HASTIE, GANEY and SEITZ, Circuit Judges.

Marcus W. Sisk, Washington, D. C. (Arnold Ordman, Dominick L. Manoli, Marcel Mallet-Prevost and Warren M. Davison, Washington, D. C., with him on brief), for petitioner.

Payne H. Ratner, Wichita, Kan., for respondent.

John A. Criswell, of Myrick, Criswell & Branney, Englewood, Colo., for intervenors.

Before MURRAH, Chief Judge, PHILLIPS, Circuit Judge, and CHILSON, District Judge.

MURRAH, Chief Judge.

In this petition to enforce an N. L. R. B. § 8(a) (5) and (1) unfair labor practice order to bargain with the duly elected and certified representative of the employees the respondent employer challenges (1) the appropriateness of the bargaining unit and (2) the validity of the balloting in the representation election pursuant to which the charging and intervening union was certified as the bargaining agent.

In the 9(c) representation proceedings the issue was whether the truck drivers at respondent's Denver, Colorado, terminal were an appropriate bargaining unit, the respondent contending that a single terminal unit was inappropriate and the only appropriate unit would be a system-wide unit of all the employer's truck drivers. The trial examiner's findings and rulings were to the effect that the employer was a motor common carrier of petroleum products with its principal office in Enid, Oklahoma, and twenty-nine terminals located in five states, two of which were located at LaJunta and Denver, Colorado. It employed 471 truck drivers and 88 shop employees in the system. Approximately 17 truck drivers and 3 mechanics were working at the Denver Terminal. All of the terminals were controlled and directed from the employer's principal office at Enid where all bookkeeping and administrative records were kept and all policy decisions made. The trial examiner properly observed that although there were several factors tending to show that a system-wide unit as proposed by the employer could be appropriate, the question was whether these factors were so compelling as to require a finding that such unit was the only appropriate one. He noted that the Denver terminal was geographically separated from the main terminal and from all other terminals by substantial distance, the closest being the LaJunta terminal approximately 180 miles away; that there is at most only an occasional exchange of drivers to and from the Denver terminal; that "to a certain degree there was local supervision of the drivers and indeed local autonomy in the conduct of its day to day operations." Specifically, he found that "the Denver terminal manager possesses the authority to make work assignments, discipline, reprimand and to effectively recommend discharge of Denver terminal drivers." The examiner also took into consideration as an "additional" factor the absence of any bargaining history for any of the employer's employees and the fact that no labor organization seeks a broader unit. From this it was concluded that the truck drivers at the employer's Denver terminal were an appropriate bargaining unit. On the basis of this decision the Regional Director directed an election by secret ballot among the employees of the unit found to be appropriate "subject to the Board's rules and regulations". The election conducted by mail ballot resulted in a majority for the intervening union.

The respondent objected to the conduct of the election by mail ballot and unsuccessfully sought to enjoin it in the District Court of Colorado. After the votes were tallied, the respondent filed specific objections to the mail ballot procedure as being contrary to the statutory mandate and the Board's applicable regulations and requested a Board hearing. The Board denied a hearing; the Regional Director considered and overruled the specific objections and certified the union as the bargaining agent.

The employer refused to bargain with the certified union for the sole purpose of raising in this unfair labor practice proceedings the appropriateness of the unit and the validity of the mail ballot as not in conformity with the rules and regulations of the Board. General Counsel introduced the entire record of the 9(c) representation and election proceedings as the Board's case on the intervening union's unfair labor practice charge. On the basis of this record the examiner found that the employer had refused to bargain with the certified representative of its employees in violation of § 8 (a) (5) and (1) and recommended the conventional cease and desist and affirmative order. The Board adopted the findings and recommendations of the examiner and entered an order accordingly.

■■ We first consider the appropriateness of the unit with full realization that the decision is statutorily committed to the Board with power to determine whether the appropriate unit shall be "the employer unit, craft unit, plant unit, or subdivision thereof". § 9(b). The judicial function on petition to enforce is confined to a review of the record to determine whether the Board's decision can be said to be without foundation in fact and law. See N. L. R. B. v. Dewey Portland Cement Co., 10 Cir., 336 F.2d 117 and cases cited. But, in order to determine on review whether the Board has exercised the wide discretion committed to it within the purview of the authorizing statute, it must "disclose the basis of its order" and "give clear indication that it has exercised the discretion with which Congress has empowered it." See Phelps Dodge Corp. v. Labor Board, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271, quoted in N. L. R. B. v. Metropolitan Life Ins. Co., 380 U.S. 438, 443, 85 S.Ct. 1061, 13 L.Ed.2d 951.

It is the respondent's contention that the evidence is wholly insufficient to support the conclusion that the Denver terminal is an appropriate bargaining unit; that the proof conclusively shows that the company is a highly centralized, integrated transportation company without requisite autonomy at the terminal level; that in any event the Board has not sufficiently articulated the basis for the exercise of its statutory discretion. Attention is called to the Board's decision in Groendyke Transport, Inc., 92 N.L.R.B. 1332, wherein the Board found in 1951 that a unit comprised of three of respondent's terminals was nct an appropriate bargaining unit based upon a finding that "Although each of its terminals is supervised by a local manager, each of these managers is directly responsible to the employer's traffic manager who is stationed at its principal offices in Enid, Oklahoma. The employee skills, working conditions, and pay rates in all the employer's terminals are identical, and there is frequent interchange of employees between its various terminals as required by the shifts of its business and as directed by its traffic manager * * * They are widely separated geographically and do not correspond to any functional or administrative division of the employer's operations."

It is suggested that the Board's findings in the 1951 case are materially inconsistent with the Board's findings on which the present order of appropriateness rests; that there is nothing in the record to show a change in the respondent's operations since the Board's decision except an expansion of his territorial operations and personnel. The present finding and conclusion is said to be inccnsistent not only with the prior decision involving this employer, but with a long

line of prior decisions involving the transportation industry; and that the Board has not given any clear indication of a change in policy or disclosed the basis for its present order. The plea is that if the Board has now changed its mind or policy concerning the appropriateness of this unit or similar ones, the reasons therefor should be clearly articulated in the present findings pursuant to which a single unit is found to be appropriate.

In this proceeding the respondent offered in evidence the transcript of the 1951 proceedings on which the Board's decision rested. The examiner sustained General Counsel's objections apparently on the grounds that the decision was too remote to be relevant to the present issue of appropriateness. We think the Board's prior decision involving this respondent's operations upon which the very issue of appropriateness was made to depend was distinctly relevant to the consideration of the appropriateness of this unit. In the first proceeding a three terminal unit was deemed to be inappropriate. The Board now finds that one terminal is appropriate. In the prior proceedings it apparently could find no local autonomy. In the present proceedings it finds local autonomy with supervisory powers in the terminal manager to make work assignments, discipline, reprimand and effectively recommend discharge of terminal drivers. These factors are, of course, distinctly relevant to the question of appropriateness and some reconciliation is in order.

We think it was clearly incumbent upon the Board in circumstances like these to articulate the reasons for its apparently inconsistent findings in the two cases involving the operations of the same employer. If the operations of the company have undergone a change or if there is a rational difference between the three terminal unit and the single terminal unit, the integrity of its own administrative process requires the Board to so state. Cf. N. L. R. B. v. Davis Cafeteria Inc., 5 Cir., 358 F.2d 98; N. L. R. B. v. Capital Bakers, Inc., 3 Cir.,

351 F.2d 45. It may well be that an acceptable rationale exists for the apparent inconsistency. In his brief General Counsel suggests a plausible basis for drawing a distinction between the appropriateness of a three terminal unit and a one terminal unit based upon distance, functional and administrative considerations. But, as pointed out in N. L. R. B. v. Metropolitan Life Insurance Company, supra, " * * * the integrity of the administrative process requires that 'courts may not accept appellate counsel's post hoc rationalizations for agency action'." We think the reasons which prompted the Supreme Court to decline enforcement in Metropolitan constrain us to decline enforcement in this case.

The matter is, therefore, remanded for further consideration consistent with the views herein expressed. But, inasmuch as the Denver terminal may ultimately be found to be an appropriate bargaining unit, it becomes necessary to consider the challenged validity of the election by mail ballot.

The substance of respondent's objection is simply that an election conducted by mail ballot, as in this case, is not in conformity with the mandate of the statute which provides that the Board " * * * shall direct an election by secret ballot and shall certify the results thereof", 9(c) (1) (B) and with the applicable regulation which provides that " * * * [a]ll elections shall be by secret ballot." § 102.69, 29 C.F.R. Neither the statute nor the regulation expressly or impliedly forbids the conduct of an election by mail ballot, so long as the mandate for secrecy is vouchsafed. The Board is undoubtedly empowered to prescribe reasonable rules for the conduct of an election by secret ballot, i. e. see N. L. R. B. v. William J. Burns International Detective Agency, 8 Cir., 346 F.2d 897. And, elections by mail ballot are not uncommon. See Pacific Gas & Electric Co., 3 N.L.R.B. 835: Pacific Greyhound Lines, 4 N.L.R.B. 520; Southwestern Greyhound Lines, 80 N.L.R.B. 1388; Pennsylvania Power & Light Co, 64

N.L.R.B. 874; Cities Service Oil Co., 80 N.L.R.B. 1512; Pacific Gas & Electric Co., 89 N.L.R.B. 938; Atlas Imperial Diesel Engine Co., 93 N.L.R.B. 268; Southwestern Michigan Broadcasting Co., 94 N.L.R.B. 30; F. W. Woolworth Co., 96 N.L.R.B. 380; Continental Bus System, Inc., 104 N.L.R.B. 599; Simplot Fertilizer Co., 107 N.L.R.B. 1211; Shipowners Association of the Pacific Coast, 110 N.L.R.B. 479; and National Van Lines, 120 N.L.R.B. 1343. The privacy of the voting booth is, of course, the accepted and traditional manner and procedure for casting a secret ballot, but ballot by mail is an accepted procedure throughout the country as not incompatible with the democratic process of secret balloting. No case is cited, and we have found none, wherein the use of the mails has been condemned or challenged as an unacceptable method of conducting an election by secret ballot. See N. L. R. B. v. William J. Burns Internat'l Detective Agency, supra; N. L. R. B. v. O. K. Van Storage Inc., 5 Cir., 297 F.2d 74; N. L. R. B. v. Sumner Sand & Gravel Company, 9 Cir., 293 F.2d 754. We hold that the use of the mails is not per se an illegal procedure for conducting an election by secret ballot.

Considering the respondent's post election objection to the conduct of the election by mail as in contravention of the statute and regulation, the Regional Director in his supplemental decision noted that it had been consistently held in a "long line" of cases that the Regional Director may "in the exercise of his discretion conduct an election by mail ballot where he believes such method to be most suitable"; that "prior to announcing that balloting would be by mail in this instance, the availability of the voters for a manual election was carefully checked"; that "an investigation disclosed that the truck drivers who were to vote in the election could not be scheduled to vote at any single location within a reasonable period of time * * *"; and that in the interest of giving each eligible voter full opportunity to vote with the least inconvenience to the voters and the employer, the election should be conducted by mail. The Director also observed that the notice of election stated that it would be conducted by mail ballot, when the ballots would be mailed, when they were to be returned to the Board and when and where they were to be counted; that in accordance with established Board procedure in mail elections the ballots were mailed directly to employees' homes with detailed instructions as to marking them in secret, sealing them in the return envelopes provided and putting them in the mail without discussion with anyone. All of the envelopes containing the ballots were opened and tallied in the presence of observers for both the employer and the union. The employer's observer challenged three ballots and the union observer challenged five ballots. The name stubs on the envelopes of the remaining unchallenged ballots were then detached and removed in the presence of the observers and without being unfolded were dropped into a basket and mixed together. They were then placed on a table face up and counted.

Apparently the Director's attention was called to an instance in which one voter opened the envelope and marked his ballot at his desk in the company's office in the presence of two other employees. The Director found that after marking it, he personally sealed it in the return envelope and placed it in the outgoing regular mail and that there was no evidence that anyone saw him actually mark his ballot or that the secrecy of the balloting was in any way impaired or violated. It is not clear whether respondent relies on this incident to prove his thesis that an election by secret ballot cannot be legally conducted by use of the mails, or whether it is intended to challenge the validity of the individual ballot. But, it is insufficient in either event.

In the unfair labor practice proceedings respondent offered to prove that when one voter received his ballot by mail, he opened it in the presence of his wife and that they both read it, talked about it and that he voted in her presence after which one

of them sealed and mailed the ballot. Respondent also sought by subpoena duces tecum to the supervising examiner to produce in this proceedings all registered mail notices showing the signatures of the persons receiving the ballots and all envelopes bearing the signatures of all parties voting in the election. The declared purpose of this was to show that in many instances wives or members of the family signed these receipts as well as the signatures on the return envelopes. On motion of General Counsel the subpoena was revoked on the grounds that the subpoenaed records were not subject to production under the Board's rules and regulations, i. e. § 102.118, except with permission of the General Counsel which had neither been obtained nor requested by the company.

In the first place there is nothing on the record to indicate that the evidence sought now to be produced for the first time in the unfair labor practice proceedings was unavailable to the respondent when he filed his timely post election objections which were fairly considered by the Regional Director and disposed of. In the absence of some showing of the unavailability of the evidence justifying non-compliance with § 102.69(a), we will not notice it here. Cf. N. L. R. B. v. Ideal Laundry & Dry Cleaning Company, 330 F.2d 712; N. L. R. B. v. J. J. Collins' Sons, Inc., 7 Cir., 332 F.2d 523; N. L. R. B. v. Dewey Portland Cement Co., supra. Moreover, we understand the purpose of the proffered evidence was to condemn the legality of the procedure and not to challenge the integrity of the individual balloting. Irregularities in the conduct of the election, if indeed there be any, went to the validity of the individual ballots and not to the procedure by which they were cast.

We hold that respondent was accorded a full hearing on all issues raised in the post election proceedings and that the election was valid if on remand the unit is found to be appropriate. The matter is accordingly remanded.